## WILLIAMS v. CHICAGO & N. W. RY. CO.

1. The mere presence in the jury room of a bailiff, having charge of the jury, for four or five hours, during which time no vote was taken by the jury, and the case was not discussed, and the bailiff held no communication with any of the jurors, and nothing occurred which could possibly have influenced any juror, is not such misconduct of the jury as will warrant a new trial, in the discretion of the lower court.

2. A trial judge may, of his own motion, instruct a jury, at any time before the verdict is received, concerning the number of jurors required to render a verdict.

(Opinion filed April 4, 1899.)

Appeal from circuit court, Clark county. Hon. J. O. ANDREWS, Judge.

Action by M. Williams against the Chicago & Northwestern Railway Company to recover damages for the killing of stock. Verdict was given for defendant, and from an order granting a new trial defendant appeals. Reversed.

*Coe I. Crawford, A. W. Burtt* and *C. G. Sherwood,* for appellant.

*S. A. Keenan*, for respondent.

HANEY, J.   This appeal is from an order granting a new trial upon the application of the plaintiff.   Three statutory grounds are designated in the notice of intention:   (1) Irregularity in the proceedings of the court and jury; (2) misconduct of the jury; and (3) errors in law occurring at the trial.   The first two of these grounds can be supported only by affidavits; the last by a bill of exceptions or statement of the case. · Comp, Laws, § 5089.

But one affidavit was served with the notice of intention. It is as follows:   "E. A. Parmenter and Hans Lien, Sr., each being first duly sworn, on his oath deposes any states as fol· lows:   I was one of the jurors who tried the above entitled action at the December, 1896, term of said court.   I am one of the jurors who did not agree to the verdict rendered in said cause.   That said jury retired for deliberation at about four o'clock on the 11th day of December, 1896, and that eight of the said jurors were in favor of returning a verdict for plaintiff, and so voted, till towards morning of the next day.   That one A. E. Foss was the bailiff who had said jury in charge. That during part of the night said jury were out for deliberation the said bailiff was in the jury room with the jury, and before the jury agreed to said verdict, and remained with the jury continuously for four or five hours."

Defendant read the following affidavits in opposition to the motion:

"W. C. Elliott and W. Mead, being first duly sworn, each for himself on oath says:   I was a member of the jury that rendered the verdict in the above-entitled cause.   Near morn-

ing one of the jurors invited Andrew Foss, the bailiff, to come into the jury room and warm. He had stayed out about all night in the halls. There was no fire in that part ot the building except in the jury room and the night was bitterly cold. Mr. Foss came in, and laid down on the floor near the door. He did not talk with any of the jurors, nor did they talk with him, while he stayed in the room, nor were any of the jurors near him while he was in the room. No communication was had between him and any of the jurors, by word. sign, letter, or otherwise, while he was in the room. No talk was had between the jurors, nor did the jury vote while he was in the room. When warm, he went out and locked the door behind him, leaving the jury together."

"Andrew Foss, being first duly sworn, on his oath says: I was the bailiff in charge of the petit jury in the above cause. Between 2 and 3 in the morning I was invited by one of the jurors to come into the jury room and warm, as there was no fire in that part of the building except in the jury room, and I had been standing in the cold all night, and was chilled to the bone. The night was very cold. On that invitation I went into the jury room, and lay on the floor, head to the door. I did not converse with any of the jurors while there, neither did any of the jurors converse with me, nor was any vote taken, nor any act done, nor anything said about the case, while I was present. None of the jurors were near that part of the room where I was during that time, and no communication of any kind passed between us, by word, sign, or letter, or otherwise, during my stay in the jury room. I was in the jury room some time, and when warm I left the room, locking the jury in, as usual."

The foregoing are all the affidavits read upon the hearing of the motion for a new trial. Therefore only two grounds for granting the motion were properly before the trial court, namely, misconduct of the jury, and errors in law occurring at the trial. The alleged misconduct consisted simply in the presence of the bailiff in the jury room under the circumstances shown by the affidavits. Defendant objected to plaintiff's affidavit, on the ground that jurors cannot be heard to impeach their own verdict. Plaintiff contends this rule does not apply to cases wherein three-fourths of the jury may render a verdict, and the jurors making the impeaching affidavits do not agree to the verdict. This question need not be decided at this time. Plaintiff's affidavit contains no fact not shown by the affidavits read by defendant. If it be wholly disregarded, the undisputed facts upon which the misconduct is predicated remain precisely the same. They merely amount to this: The bailiff was for a time in the jury room, during which time nothing occurred which could possibly have influenced the mind of any juror. Upon these undisputed facts, a new trial should not have been granted. Edward Thompson Co. v. Gunderson, 10 S. D. 42, 71 N. W. 764.

It is true that a motion for a new trial upon questions of fact is addressed to the sound discretion of the trial court, and the decision of such court, in granting or refusing the same, will not be disturbed by the appellate tribunal, unless it appears affirmatively from the record that there has been an abuse of such discretion. Grant v. Grant, 6 S. D. 147, 60 N. W. 743. It so appears from this record, so far as the charge of misconduct on the part of the jury is concerned. Giving plaintiff the full benefit of the statements contained in his affi-

davit, there is no question of fact involved. The trial judge was bound to conclude from the evidence before him that there was no misconduct on the part of the jury. He was bound to act upon the record, and was not justified in granting a new trial upon this ground.

No allusion to the law relating to three-fourths verdicts was made in the court's charge when the case was first submitted to the jury; no exception was taken on this account at the time; and neither party requested any instruction on the subject. After the jury had deliberated several hours, they came into court and reported a disagreement. Numerous, perhaps unnecessary, inquiries were put to them by the judge touching the prospects of reaching an agreement, and they were sent out to have breakfast. When they returned, more inquiries were made, among others this: "How many of you have agreed at this time? Hands up that are of the same opinion." Ten hands were raised. Soon after this the jury were instructed that nine or more of their number might return a verdict. They retired, and subsequently rendered a verdict for defendant, to which ten jurors agreed.

Plaintiff excepted to the giving of the charge in respect to a three-fourths verdict, on the grounds that further instructions had not been requested by the jury, and none on the subject of a three-fourths verdict had been requested by either party. All these facts appear from a statement of the case, and not by affidavits. If there was any irregularity in the proceedings of the court with respect to the manner in which the jury was examined by the trial judge, touching the prospects of an agreement or how they were divided in opinion, such irregularity was not presented to the court below by plaintiff's applica-

tion for a new trial, and should not have been considered. Comp. Laws, § 5089. It was not an error in law occurring at the trial for the judge to charge the jury, at any time before their verdict was received, concerning the number required to render it, in the action then pending, provided he gave the law on that subject correctly, and it is conceded he did so in this case. Hence we conclude that the order of the circuit court must be reversed. and the cause remanded, with directions to enter judgment for defendant upon the verdict as rendered by the jury.