**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Peter A. KEIL, Defendant–Appellant.**

**No. 56616.**

Missouri Court of Appeals,
Eastern District
Division Four.

Aug. 7, 1990.

John M. Putzel, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., M. Melissa Manda, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

CARL R. GAERTNER, Presiding Judge.

Appellant Peter A. Keil appeals his jury conviction of four counts of sodomy and his sentences of five, ten, ten, and five years respectively, to be served concurrently. We affirm his convictions on counts II, III, and IV, and reverse his conviction on Count I.

The victim, a three-year-old boy named C.R., resided with his parents and two siblings in Michigan. From December 23–30, 1987, the family was staying at the St. Louis County home of C.R.'s grandparents. Appellant, C.R.'s uncle, was also at the residence periodically.

C.R.'s mother testified that upon their return home to Michigan, C.R. was agitated, disruptive, and uncooperative. On January 4, 1988, C.R.'s mother was cleaning him and noticed he had "six or seven" tears in his rectum. She asked C.R. what happened to his "bottom" and he replied, "Peter put his finger in my poop hole." Appellant is the only "Peter" C.R. knows. Later that same day C.R. told his father the same thing. C.R.'s father testified that C.R. began having nightmares, and about March C.R. told his father that Peter put his penis in his "butt" and put his penis in C.R.'s mouth. In the summer of 1988 C.R. told his father after one of his nightmares that Peter "peed white stuff" all over his face.

Detective Sergeant Ken Kleinheksel of the Juvenile Crimes Bureau of the Kent County, Michigan, Sheriff's Department was contacted by C.R.'s parents. On January 8, 1988, after getting a brief background statement, Sergeant Kleinheksel interviewed C.R. C.R. likewise informed Sergeant Kleinheksel that Peter put his finger in C.R.'s "poop hole." C.R. then demonstrated, with anatomically correct dolls, that appellant put his penis in C.R.'s rectum. C.R. then stated, and demonstrated with the dolls, that appellant had C.R. put his mouth on appellant's penis, and that "pee" came out of it. Sergeant Kleinheksel asked what color the pee was. C.R. replied, "It was white." C.R. also said that

he had to touch appellant's penis with his fingers.

On January 22, 1988, C.R. was examined by Dr. Kathryn Bowen at the Sexual Abuse Management Clinic at Cardinal Glennon Children's Hospital in St. Louis, Missouri. Dr. Bowen testified there were positive findings of redness around the rectum and unusual ridges. These findings were consistent with sexual abuse, but Dr. Bowen could not conclusively rule out other causes.

Andrea Baier–Petiet, a clinical psychologist, testified she began therapy sessions with C.R. in April, 1988. Ms. Petiet stated C.R. said nothing of the incidents until December 19, 1988. On that day, during a therapy session, C.R. stated he was angry with "Peter." Ms. Petiet asked what happened, and C.R. stated Peter told him to take his pajamas off. He then undressed two anatomically correct dolls and proceeded to describe and demonstrate that appellant put his penis in C.R.'s "butt hole" and mouth.

C.R. was five years old when appellant's trial took place. He testified that appellant touched him and circled a mouth and an anus on an anatomically correct drawing. He testified appellant touched him in those places with his finger and his penis. C.R. said he saw "pee" come out of appellant's penis. C.R. was then handed two anatomically correct dolls and was asked to show what happened. C.R. put one doll's penis on the other's rectum, then took one doll's fingers and placed them on the other doll's rectum, and finally placed one doll's mouth on the other doll's penis.

Appellant raises four points on appeal. For the sake of clarity we begin with his second, which alleges trial court error in denying his motion for judgment of acquittal as to Count I because the evidence, viewed in the light most favorable to the state, showed an act involving the hand of one person and the rectum of another, which is not an act of "deviate sexual intercourse" as defined in § 566.010.1(2) RSMo. 1986.

Section 566.060.3 RSMo.1986 states:

A person commits the crime of sodomy if he has deviate sexual intercourse with another person to whom he is not married who is less than fourteen years old.

Section 566.010 states:

1. As used in this chapter:

(2) "Deviate sexual intercourse" means any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person[.]

■ The act specified in Count I alleged to have constituted deviate sexual intercourse was appellant's putting his finger in C.R.'s rectum. This act does not involve the genitals of *either* person, and therefore does not fall within the definition of deviate sexual intercourse. The evidence on Count I was insufficient to convict appellant of sodomy.[1] Appellant's conviction on Count I is reversed.

Appellant next contends the trial court erred in submitting to the jury the verdict directing instructions because they did not follow the applicable pattern instruction for sodomy. He asserts he was prejudiced thereby because the instructions did not require the jury to find that the act alleged constituted deviate sexual intercourse and that the act was done with the intent to arouse or gratify sexual desire.

Appellant's argument is predicated upon the fact that the verdict directing instructions on each of the four counts of sodomy did not include the following language:

As used in this instruction, the term "deviate sexual intercourse" means any act involving the genitals of one person and the mouth, tongue, hand or anus of another person done for the purpose of arousing or gratifying the sexual desire of any person.

1. The State's request that we remand Count I for trial on a charge of sexual abuse in the first degree, § 566.100 RSMo.1986, is denied. Appellant was not charged with that offense in Count I. Whether or not an attempt to charge such an offense at this time would run afoul of double jeopardy protection is an issue we leave for another day. *See State v. Fields,* 739 S.W.2d 700, 704 (Mo. banc 1987).

Appellant contends that the omission of this paragraph from the instructions constitutes a deviation from MAI–CR3d 320.08.2 and the giving of the instruction in this form constitutes an erroneous violation of Rule 28.02. Although it is easy to perceive the basis of appellant's contention, it is nevertheless without merit.

The published form of the current version of MAI–CR3d 320.08.2, which includes the definition of deviate sexual intercourse omitted from the instructions given in this case, contains in the upper left-hand corner the date 1–1–89. However, this revision of the instruction was approved by the Supreme Court by order dated March 9, 1989. This order provides the revised instruction "must be used and followed on and after July 1, 1989...." The order further provides for the revised instruction to be published in the Journal of the Missouri Bar and the Southwestern Reporter.

■ The trial of this case began on March 14, 1989 and concluded on March 16, 1989. Accordingly, the prior version of MAI–CR3d 320.08.2, which did not include the definitional paragraph, was properly utilized in this case. We cannot charge the trial court with error for failing to give a revised instruction which had not been publicly disseminated at the time of the trial.

■ Moreover, even if the revised instruction defining deviate sexual intercourse had been required, we would not find the omission of the definition from the instructions in this case to be prejudicially erroneous. Rule 28.02(f) provides for a judicial determination of the prejudicial effect of an erroneous instruction. In making this determination, we must consider the instruction in the light of the facts in the case. *State v. Ward*, 745 S.W.2d 666, 670 (Mo.banc 1988).

Appellant does not contend the instructions on Count II, III and IV do not properly require the jury to find the acts constituting the offense of sodomy. Rather he argues that because of his testimony that he may have "accidentally" touched C.R., he was prejudiced because the jury was not required to find the essential element of intent to arouse or gratify sexual desire.

Considering the evidence as a whole we are unable to perceive of any possibility that the jury could have convicted appellant because of accidental or innocent touching, the concern which gave rise to the revision of the patterned instruction. *See State v. Fields*, 739 S.W.2d 700, 704 (Mo.banc 1987).

■ The evidence in this case presented a clear-cut issue on each count; either appellant put his penis in C.R.'s rectum, into C.R.'s mouth and had C.R. touch his penis or he did not. There was no evidence that any of these acts may have occurred accidentally without intent to arouse or gratify sexual desire. Appellant testified that he may have innocently touched C.R.'s "bottom". He steadfastly denied any genital contact. The facts in this case are similar to those in *State v. Fowler*, 762 S.W.2d 540, 541 (Mo.App.1988), in which we found "no prejudicial error, plain or otherwise" from the omission of a required finding of intent from the prior form of MAI–CR3d 320.08.2. Point denied.

Appellant's next point on appeal asserts the trial court erred in allowing C.R.'s therapist, Andrea Baier–Petiet, to testify concerning C.R.'s statements to her, because the statements failed to meet the requirements of § 491.075 RSMo.1986.

Section 491.075 states in pertinent part:
1. A statement made by a child under the age of twelve relating to an offense under chapter 565, 566 or 568, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:
(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and
(2) The child either:
(a) Testifies at the proceedings; or
(b) Is unavailable as a witness.

In this case a hearing, which included Ms. Petiet's testimony, was held outside the presence of the jury. The trial court

made a specific finding of reliability. Appellant contends this was error because C.R. did not see Ms. Petiet until April, 1988, and the statements in question were not made until December 19, 1988, almost a full year after the incident.

▪ A determination of reliability under § 491.075 is made after considering the particular facts and circumstances of each case. *State v. Fraction*, 782 S.W.2d 764, 767 (Mo.App.1989). The trial court has discretion to determine if the child's out-of-court statements have a sufficient indicia of reliability, considering the time, content, and circumstances involved. *State v. Potter*, 747 S.W.2d 300, 305 (Mo.App.1988).

▪ Here, C.R.'s statement to Ms. Petiet, while almost a year after the events, was consistent with the statements he made to his parents and Sergeant Kleinheksel, and consistent with his testimony. Ms. Petiet testified she was aware of the occurrence but did not ask C.R. about it. Instead, she waited until he volunteered the information, which first requires a build-up of confidence and trust. It is also important to note that Ms. Petiet is not a family member but a trained professional with experience in these situations. We find no abuse of discretion in the trial court's finding of reliability. Point denied.

Appellant's final point alleges error in the trial court's failure to declare a mistrial after certain comments made by the prosecutor during closing argument.

During the rebuttal portion of the state's closing argument, the prosecutor stated that " ... if he'll do it to his own nephew, he'll do it to anyone." The trial court sustained defense counsel's objection, and no further relief was requested. A few moments later the prosecutor referred to defense attorneys as "vultures." The trial court sustained defense counsel's objection and request that the jury be instructed to disregard the statement, but overruled the request for a mistrial.

▪ Declaration of mistrial is a drastic remedy to be used only in extreme cases. *State v. Sidebottom*, 753 S.W.2d 915, 919–20 (Mo.banc 1988). *cert. denied*, 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988). The trial court has broad discretion in controlling closing argument, and in determining what constitutes an impermissible inference. *State v. Parkus*, 753 S.W.2d 881, 885 (Mo.banc 1988), *cert. denied*, 488 U.S. 900, 109 S.Ct. 248, 102 L.Ed.2d 237 (1988). Improper argument is grounds for reversal only if it can be shown the prosecutor's comments had a decisive effect on the jury. *State v. Clark*, 759 S.W.2d 372, 374 (Mo.App.1988); *State v. White*, 733 S.W.2d 57, 61 (Mo.App.1987).

▪ The trial court did not abuse its discretion in not granting a mistrial after the prosecutor's "if he'll do it to his own nephew" remark because a mistrial was not requested. Appellant received all the relief he requested at that time. As for the "vultures" comment, taken in the context of the whole argument it is clear the prosecutor was not making a statement aimed at appellant or his counsel, but was referring generally to criminal defense lawyers who might be guided in similar cases by the jury verdict in this case. The use of the word was intemperate and unprofessional. However, given the strong evidence against appellant, we are unable to discern any decisive effect upon the jury from this unfounded characterization. We find no abuse of discretion. Point denied.

The judgment of the trial court is reversed as to Count I, and affirmed as to the remaining three counts.

JOSEPH J. SIMEONE, Senior Judge, and STEPHAN, J. concur.